# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **GARY LYNN HINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:17-00012** |
| | ) | **Judge Campbell/Brown** |
| **NANCY A. BERRYHILL, ACTING** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**To: The Honorable William L. Campbell, Jr., United States District Judge.**

### REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner denying plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 416(I) and 423(d), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* For the reasons explained herein, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 28) be **DENIED** and the Commissioner's decision **AFFIRMED**.

### I. PROCEDURAL HISTORY[1]

Plaintiff filed applications for DIB and SSI on December 31, 2013, alleging a disability onset date of July 18, 2013 in both instances. Plaintiff alleged disability due to back and stomach problems. (Doc. 19, p. 264) Both claims were denied initially on June 4, 2014, and upon

---

[1] The procedural history below is adopted from the Jurisdiction and Procedural History section of the Administrative Law Judge's (ALJ) June 2, 2016 decision in the corrected copy of the administrative record (Doc. 25-1, p. 26) unless otherwise indicated. References to page numbers in the administrative record are to the numbers that appear in bold in the lower right corner of each page.

reconsideration on September 18, 2014.

Plaintiff requested a hearing before an ALJ on September 22, 2014. A hearing was held before ALJ Brian Lucas on April 25, 2016. Plaintiff was represented at the hearing by attorney Allston Vander Horst. Vocational expert (VE) Stephen Schnacke testified at the hearing.

The ALJ entered an unfavorable decision on June 2, 2016 (Doc. 19, pp. 23-37), after which plaintiff filed a request with the Appeals Council on June 16, 2016 to review the ALJ's decision (Doc. 19, p. 20). The Appeals Council denied plaintiff's request. (Doc. 19, pp. 1-6)

Plaintiff brought this action through counsel on February 7, 2017. (Doc. 1) Thereafter, plaintiff filed a motion for judgment on the administrative record on August 12, 2018 (Doc. 28), and defendant responded on August 31, 2018 (Doc. 29). Plaintiff did not file a reply. This matter is now properly before the court.

## II. EVIDENCE

### A. Medical Evidence of Record[2]

The records of Dr. Scott McCall, M.D., are before the court for the period March 13, 2007 to April 9, 2012. (Doc. 25-1, pp. 493-500) Dr. McCall saw plaintiff four times for back pain during this 5 year period. (Doc. 25-1, pp. 495-97, 499) On May 20, 2009, Dr. McCall noted that plaintiff's back pain "tends to be worse with stooping and bending maneuvers . . . ." (Doc. 25-1, p. 495)

Hickman Medical Clinic records show that family practitioner Dr. Zachary Hutchens, M.D., saw plaintiff three times between January 15, 2013 and January 14, 2014. (Doc. 25-1, pp. 381-96) Plaintiff complained of "[c]hronic back pain" on December 10, 2013 and represented that he drank "six beers a day." (Doc. 25-1, pp. 389-91) On December 17, 2013 Dr. Hutchens reported that he

---

[2] The medical evidence of record (MER), non-medical documentary evidence, and testimony at the hearing are discussed below to the extent necessary to address plaintiff's claims of error. The remainder of the evidence is incorporated herein by reference.

was "going to tell [plaintiff] to cut back on his drinking." (Doc. 25-1, p. 388) Plaintiff represented on January 14, 2014 that he had "chronic back pain," and Dr. Hutchens reported that plaintiff's "[a]lcohol consumption [ha]s decreased." (Doc. 25-1, pp. 385-86) Dr. Hutchens did not report any psychological issues during this period, nor did he make any specific diagnoses. Dr. Hutchens also did not order any physical therapy, medical tests, refer plaintiff to specialists, or recommend any surgical procedures on plaintiff's back during this period, nor did he at any time thereafter.

Plaintiff was admitted to St. Thomas Hickman on February 6, 2014 after he "was sent to [the] emergency room from [an] outpatient clinic." (Doc. 25-1, p. 349) Plaintiff underwent a CT scan with contrast that revealed, as reported by radiologist Dr. Michael Friday, M.D., "[m]arked[3] degenerative changes of the thoracolumbar spine." (Doc. 25-1, p. 367) Dr. Marek Durakiewicz, M.D., the attending physician in the ER, characterized the "[m]arked degenerative changes" as "mild" after reviewing plaintiff's "records in [the] radiology department." (Doc. 25-1, p. 349) Dr. Durakiewicz's admission and discharge diagnoses included "[m]ild alcohol withdrawal . . . [and] . . . [a]nxiety." (Doc. 25-1, p. 346)

Dr. Hutchens saw plaintiff on February 13, 2014 after he was released from St. Thomas Hickman. (Doc. 25-1, pp. 383-84) Plaintiff complained of back pain, and Dr. Hutchens opined that that he had "extensive thoracolumbar arthritic disease . . . ." based on the St. Thomas Hickman CT scan. (Doc. 25-1, p. 384) Plaintiff complained of chronic low a mid-back pain on March 17, 2014, and Dr. Hutchens reported that plaintiff had "pretty severe degenerative disk and joint disease in his thoracic spine," again based on the St. Thomas Hickman CT scan. (Doc. 25-1, p. 382) Dr. Hutchens also reported that plaintiff had "pretty much quit drinking." (Doc. 25-1, p. 382) Dr. Hutchens did not report any psychological issues during this period, nor did he make any specific diagnoses.

---

[3] Marked – Having a noticeable character; clearly defined. *The American Heritage Dictionary* 2ed p. 767 (1982).

Dr. Darrel Rinehart, M.D., examined plaintiff consultively on April 8, 2014. (Doc. 25-1, pp. 397-99) Plaintiff represented, among other things, that he drank "one or two beers occasionally"[4] (Doc. 25-1, p. 398) Dr. Rinehart reported the following pursuant to his examination:

> The claimant shows same range of motion in all the joints as normal. He was able to get up and down [from] the table without difficulty. He was able to heel-walk, toe-walk, heel-to-toe walk, squat and arise. He had normal fine as well as gross motor manipulation of the hands. He had 75 degrees anterior lumbosacral flexion, lateral flexion 15 degrees in either direction and extension 10 degrees.

(Doc. 25-1, p. 399) Dr. Rinehart determined that Plaintiff "should be able to sit, stand, lift, and walk six to eight hours total in an eight-hour workday." (Doc. 25-1, p. 399) Dr. Rinehart did not report any psychological issues or mention plaintiff's drinking.

X-Rays were obtained in connection with Dr. Rinehart's examination. The radiologist, Dr. Bill Sutter, M.D., reported the following impression: "Significant multilevel lumbar degenerative disc disease at all levels from T12 through S." (Doc. 25-1, p. 400) Dr. Sutter noted as an aside that, "[I]f clinical symptoms persist, f/u CT or MRI imaging of the lumbar spine [sh]ould be obtained to evaluate for underlying spinal stenosis."[5] (Doc. 25-1, p. 400)

On April 16, 2014, Dr. George Walker, M.D., determined on initial review that plaintiff had the physical residual functional capacity (RFC) to perform the full range of medium work. (Doc. 25-1, pp. 103-04) Dr. Walker determined further that plaintiff did not have any postural, manipulative, visual, communicative, or environmental limitations. (Doc. 25-1, pp. 103-04)

Rebecca Joslin, Ed.D., completed a mental RFC assessment on September 13, 2014 upon

---

[4] Although unclear, it appears that plaintiff also told Dr. Rinehart that he could "sit and stand four to five hours and lift up to 50 lbs." (Doc. 25-1, p. 397)

[5] Spinal stenosis – "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina ['a natural opening or passage . . . especially one into or through a bone'] of the lumbar spine caused by encroachment of bone upon the space . . . .." *Dorland's Illustrated Medical Dictionary* 737, 1795 (31st ed. 2007).

reconsideration. (Doc. 25-1, pp. 152-53) Dr. Joslin determined that plaintiff had moderate limitations in his ability to: 1) maintain attention and concentration for extended periods; 2) complete a normal workday and workweek without interruptions from psychologically based symptoms; 3) perform at a consistent pace without an unreasonable number and length of rest periods; 4) interact appropriately with the general public; 5) get along with coworkers and peers without distracting them or exhibiting behavioral extremes; 6) respond appropriately to changes in the work place. (Doc. 25-1, pp. 152-53) Dr. Joslin opined that plaintiff was not otherwise significantly limited. Dr. Joslin's based her opinion on a diagnosis of severe anxiety and alcoholism. (Doc. 25-1, p. 153)

On September 16, 2014, Dr. Marvin Cohn, M.D., concurred upon reconsideration in Dr. Walker's earlier opinion, including that plaintiff had no postural, manipulative, visual, communicative or environmental limitations. (Doc. 25-1, pp. 150-51)

Dr. Hutchens saw plaintiff ten times between June 9, 2014 and January 14, 2016. (Doc. 25-1, pp. 409-88) Dr. Hutchens described plaintiff's "Alcohol Intake" as "Occasional" in the "Social History"section of his progress notes on each and every occasion. (Doc. 25-1, pp. 410, 415, 419, 423, 426, 429, 431, 449, 454, 457). Plaintiff reported twice – on November 26, 2014 and February 23, 2015 – in the History of Present Illness (HPI) section of the progress notes that his pain was controlled with medication. (Doc. 25-1, pp. 420, 426) Plaintiff reported the following repeatedly in the Review of ROS during this period: "arthralgias/joint pain and back pain but . . . no muscle aches, no muscle weakness . . . ." (Doc. 25-1, pp. 411, 416, 426, 429, 450, 454) Plaintiff also reported the following repeatedly in the ROS of the progress notes during this period: "no depression . . . feeling safe in relationship[s], and no alcohol abuse." (Doc. 25-1, pp. 411, 416, 420, 426, 429, 432, 450). Dr. Hutchens noted the following repeatedly in the "Physical Exam" section of he progress notes: 1) constitutional – no apparent distress (NAD) and ambulated "normally" (Doc.

25-1, pp. 412, 416, 420, 427, 429-30, 432, 450, 454, 458); 2) musculoskeletal – motor strength and tone "normal" and "normal movement in all extremities" (Doc. 25-1, pp. 412, 416, 420, 427, 430, 432, 450, 455, 458); 3) neurologic – "normal gait and station" (Doc. 25-1, pp. 412, 417, 420, 427, 430, 432, 451, 458).  Dr. Hutchens completed a single psychiatric examination during this period in which he described plaintiff's mental status as "normal mood and affect . . . ." (Doc. 25-1, p. 430) Dr. Hutchens noted in the Assessment/Plan section of the October 2014 to August 2015 progress notes that plaintiff was to "stop drinking altogether" (Doc. 25-1, pp. 412, 417, 421, 427, 433), but no further mention of plaintiff's drinking is made in the Assessment/Plan section thereafter.

Dr. Hutchens submitted a medical source statement (MSS) on December 28, 2014.[6]  (Doc. 25-1, pp. 407-08)  The MSS included, *inter alia*, that plaintiff could: 1) work only 2 hrs. per day; 2) stand only 15 mins. at a time while working; 3) stand a total of 1 hr. in an 8-hour workday; 4) sit for only 30 mins. while working; 5) sit a total of 2 hrs. in an 8-hour workday; 6) lift 10 lbs. occasionally; 7) lift 5 lbs. frequently; 8) only bend occasionally while working.  (Doc. 25-1, p. 407)

### B.  Other Evidence

### 1.  Testimonial Evidence

The ALJ instructed plaintiff to describe his duties while employed by Industrial Plastics Co., Inc.  At the conclusion of plaintiff's testimony, the ALJ asked the VE, "Do you need any more specific questions answered," to which the VE replied, "No, sir."  (Doc. 25-1, p. 69)

The ALJ examined the VE at the conclusion of plaintiff's subsequent testimony.  (Doc. 25-1, pp. 88-91)  The ALJ first asked the VE whether he could "categorize [plaintiff's] past work over the last 15 years in accordance with the <u>Dictionary of Occupational Titles</u> [DOT]."  (Doc. 25-1, p.

---

[6]  The second page of the form-MSS has been omitted from the administrative record, *i.e.*,p. 2, ¶¶ 8-14.  The undersigned concludes that the omission was intentional because the page was missing in the original administrative record (Doc. 19), because the parties agreed to substitute Doc. 25-1 for the original administrative record, and because of the importance of Dr. Hutchens' opinion to this action..

88)(underline in the original)   The VE testified that plaintiff was employed "as a laborer in a plastics facility . . . DOT number . . . 559.667-014, skill level of 2 . . . exertional requirement . . . medium."  (Doc. 25-1, p. 88)  The ALJ then posed the hypothetical to the VE quoted below at p. 13.  (Doc. 25-1, p. 90)   The VE testified that the hypothetical person could perform the work as described in the DOT and as plaintiff testified he actually performed it.  (Doc. 25-1, p. 90)

Counsel cross-examined the VE on the following issues: 1) what effect plaintiff's age would have on the number of jobs for which he would be eligible; 2) what effect plaintiff's education would have on the number of jobs for which he would be eligible; 3) what effect being able to stand only 15 minutes at a time would have on the number of jobs for which he would be eligible.  (Doc. 25-1, pp. 91-95) Counsel abandoned his cross-examination following several unsuccessful attempts to question the VE in terms of light and sedentary exertional levels, rather than medium that was the basis for the hypothetical.  (Doc. 25-1, pp. 92-95)

## 2.  Other Documentary Evidence

The affidavit of Dr. Hutchens – with exhibits – is attached as Exhibit No. 9F to the administrative record.  (Doc. 25-1, pp. 504-25)  The affidavit was filed with the Appeals Council after the ALJ entered his unfavorable decision.[7]

## III.  ANALYSIS

### A.  The ALJ's Notice of Decision

Under the Act, a claimant is entitled to disability benefits if she can show her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

_____

[7]  Plaintiff asserts in the statement of the case in his memorandum of law that Dr. Hutchens's affidavit constitutes "[n]ew evidence" and that remand is called for under sentences four and six of § 405(g), because the evidence is both material and outcome determinative.  (Doc. 28-1, pp. 1-2)

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline the five-step sequential process to determine whether an individual is "disabled" within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2014). While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five to identify a significant number of jobs in the economy that accommodate the claimant's RFC and vocational profile. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart*, 710 F.3d at 374. Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. *Gayheart*, 710 F.3d at 374.

**B. Claims of Error**

**1. Whether the ALJ Failed to Consider Plaintiff's Alleged
Physical Decline in Determining That He Was
Able to Perform Past Relevant Work
(Doc. 28-1, ¶ 1, pp. 16-17)**

Plaintiff asserts that the ALJ "failed to account for [his] worsening condition which occurred after the date of Dr. Rinehart's report, which served as the basis for Dr. Walker's report." (Doc. 28-1, p. 16) Plaintiff avers that "[t]his change in conditions should have been part of the ALJ's inquiry concerning [his] ability to do PRW." (Doc. 28-1, p. 16)

Although plaintiff does not say so specifically, the alleged "worsening condition" to which

he refers appears to relate to those conditions and symptoms reported in Dr. Hutchens' progress notes during the period June 9, 2014 through January 14, 2016, discussed above at pp. 5-6 as these are the only treatment records before the court that post-date Dr. Rinehart's and Walker's reports. These records are attached to the administrative record as Exhibits 6F and 7F. As shown in the excerpt from the decision quoted below, the ALJ addressed Exhibits 6F and 7F in his decision:

> In terms of the claimant's alleged back and leg pain, he testified that his primary care physician, Zachary Hutchens, M.D., prescribes Trazadone, gagapentin, and hydrocodone. **(Ex. 6F, 7F)** Office visit notes show ongoing treatment for chronic pain; however, they also routinely note no negative side effects from medication; normal musculoskeletal examinations; and normal neurological examinations. Dr. Hutchens did not order physical therapy; objective testing such as nerve conduction studies or MRI's; or referrals to specialists such a[s] neurologist or orthopedist. The claimant has not had any surgical procedures on his back and has not had any emergency room visits due to exacerbations of pain.

(Doc. 25-1, p. 31)(bold added) Plaintiff does not argue that the ALJ erred in assessing his alleged "worsening condition," or that he erred in his RFC or PRW determination as a consequence of that alleged failure. The *only* argument here are that the ALJ "failed to account" for plaintiff's alleged "worsening condition"as that "worsening condition" was reflected in the medical records subsequent to the reports of Drs. Rinehart and Walker.

As shown in the excerpt of his decision quoted above, the ALJ reviewed the relevant records and, in so doing, took plaintiff's alleged "worsening condition" into account. Consequently, plaintiff's first claim of error is without merit.

### 2. Whether the ALJ Erred in His Consideration of Plaintiff's Alleged Psychological Symptoms
### (Doc. 28-1, ¶ 2, p. 17)

Plaintiff asserts that "the ALJ committed reversible error by failing to fully consider Dr. Joslin's findings of a severe personality disorder . . . [and by] . . . fail[ing] to provide adequate

reasons why Dr. Joslin's findings were dismissed out of hand as being 'in conflict with the record as a whole.'"

The ALJ wrote the following in his decision regarding Dr. Joslin's opinion, discussed above at p. 5:

> On September 13, 2014, State agency psychological consultant Rebecca Joslin, Ed.D., said the claimant is able to maintain attention, concentration persistence, and pace with appropriate breaks despite periods of increased signs and symptoms. (Ex. 7A, 10A). He is able to interact appropriately with [the] general public, co-workers, and supervisors on [an] occasional basis. He is able to adapt to infrequent changes in the workplace. Dr. Joslin's opinion is given little weight because it is not consistent with the record as a whole.

(Doc. 25-1, p. 30) As shown in the excerpt of the decision quoted above, the ALJ considered Dr. Joslin's findings; he did not dismiss her opinion "out of hand." The next question is whether the ALJ's explanation regarding Dr. Joslin's opinion was "adequate" under the regulations.

The law is well established that "an ALJ is procedurally required to 'give good reasons . . . for the weight [he gives a] treating source's opinion . . . .'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)(quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). However, the "good reason" "requirement only applies to treating sources . . . ." *Ealy*, 594 F.3d at 514-15 (citing *Smith*, 482 F.3d at 876 ("the SSA requires ALJs to give reasons for only *treating* sources")(italics in the original)); *see Norris v. Comm'r. of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir. 2012)("an ALJ need only explain [his] reasons for rejecting a treating source statement because such an opinion carries 'controlling weight.'")(citing *Smith*, 482 F.3d at 876). Indeed, the ALJ is not required to explain his decision as it pertains to the opinions of non-treating and non-examining sources. *See e.g., Martin v. Comm'r of Soc. Sec.*, 658 Fed.Appx. 255, 259 (6th Cir. 2016)("because . . . Dr. Joslin [is a] non-treating source[], the reasons-giving requirement is inapplicable to [her] opinion"). As explained above, the ALJ's explanation of the weight he gave to Dr. Joslin's opinion

was adequate under the regulations.

The final question is whether the ALJ's explanation is supported by substantial evidence. Apart from Dr. Joslin's opinion, and Dr. Durakiewicz noting that plaintiff reported he had a history of anxiety, the record is devoid of any evidence to support Dr. Joslin's opinion. Although "a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment," and although "diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine," *Keeton v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 515, 526 (6th Cir. 2014)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)), there must be something, e.g., diagnoses and observations of professionals trained in the field of psychology or psychiatry. There are no such diagnoses or observations in the record. Turning to the remainder of the record, as discussed above at pp. 5-6, Dr. Hutchens noted repeatedly that plaintiff reported no depression, that he felt safe in relationships, that he was in no apparent distress and, on the one occasion that Dr. Hutchens performed a psychiatric examination, that plaintiff exhibited normal mood and effect. Dr. Hutchens also noted repeatedly that plaintiff reported "no alcohol abuse' and described plaintiff's alcohol as "occasional." In short, there is an utter dearth of evidence in the record to support Dr. Joslin's opinion.

As shown above, the ALJ did not dismiss Dr. Joslin's opinion "out of hand," his explanation for the weight he gave her opinion was adequate under the regulations, and his decision regarding that weight was supported by substantial evidence. Plaintiff's second claim of error is without merit.

### 3. Whether the ALJ Assessed Plaintiff's Past Relevant Work Correctly (Doc. 28-1, ¶ 3), pp. 17-22)

Plaintiff makes the following arguments in support of his third claim of error: a) the ALJ "failed to adequately address" postural requirements for the position "General Laborer in Plastics,"

DOT 559.667-014, *i.e.*, climbing and stooping, in both his hypothetical to the VE and his RFC determination; b) the ALJ failed to address how he determined that plaintiff could climb and stoop frequently "in light of the record as a whole"; c) the ALJ failed to "fully question [plaintiff] and develop the record" regarding the physical and mental demands of his PRW"; d) the ALJ "failed to provide specific findings or analysis regarding the physical and mental demands of [plaintiff's] PRW"; e) the VE's testimony did not constitute substantial evidence." (Doc. 28-1, pp. 17-22)

Under the regulations, the ALJ is required to make specific findings of fact with respect to the "physical and mental demands of [plaintiff's] past job/occupation," and to make "every effort . . . to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, 1982 WL 31386 at **3-4 (1982). The ALJ's decision must be read in the context of the decision as a whole. *See Alalen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Futernick v. Richardson*, 484 F.2d 647, 649 (6th Cir. 1973); *see also Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 412 (6th Cir. 2006); *Gribbins v. Comm'r of Soc. Sec. Admin.,* 37 Fed.Appx. 777, 779 (6th Cir. 2002).

The undersigned notes as an initial matter that plaintiff asserts the ALJ "failed to adequately address" his alleged postural limitations in the RFC determination. (Doc. 28-1, p. 18) Apart from this single passing reference to the ALJ's RFC determination, plaintiff's couches his third claim of error solely in terms of PRW.

The district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.")(citations omitted)); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's]

behalf, or to undertake an open-ended review of the entirety of the administrative record . . . ." to determine whether plaintiff is entitled to relief); *Spirko v. Mitchell*, 368 F.3d 603, 612 (6th Cir. 2004)(citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)("[I]ssues . . . unaccompanied by some effort at developed argumentation, are deemed waived.")). In the absence of any factual allegations, the RFC part of plaintiff's third claim of error is waived.

Turning to the hypothetical, the ALJ first instructed the VE to consider the position of "General Laborer in Plastics," DOT 559.667-014, *i.e.*, plaintiff's PRW. (Doc. 25-1, pp. 89-90) The ALJ then posed the hypothetical quoted below to the VE:[8]

> . . . . I want you to assume a hypothetical individual the Claimant's age and education with the past jobs you just described. Further assume the individual is limited to perform work at the medium exertional level. Additionally, **frequent for all postural activities**, and no independent use of the left eye, but the hypothetical individual would have a full visual field in both eyes. . . .

(Doc. 25-1, p. 90)(bold added) As discussed above at pp. 6-7, the VE testified that plaintiff could perform the work of a "General Laborer in Plastics," *i.e.,* his PRW, both as defined by the DOT and as plaintiff described that work as he actually performed it.

The undersigned notes first that the only relevant documentary evidence that plaintiff had any postural limitations was Dr. Hutchens' MSS to which, as discussed below at pp. 17-22, the ALJ properly gave "little weight." The only other relevant documentary evidence that addressed postural limitations were the reports of Drs. Walker and Cohn, discussed above at 4-5. Drs. Walker and Cohn both opined that plaintiff had no postural limitations. In short, the relevant opinion evidence before does not support the conclusion that plaintiff had any postural limitations whatsoever.

---

[8] "Frequent" as used in the hypothetical is a term of art in disability proceedings that means "from one-third to two-thirds of the time" during an 8-hour workday. SSR 83-10, 1983 WL 31251 at * 6 (Jan. 1, 1983). By comparison, "occasional" means "occurring from very little up to one-third" of the workday. SSR 83-10, 1983 WL at * 5. "Occasional" and "frequent" are bracketed at either end by "never' and "constantly" respectively.

Plaintiff invites the court's attention to Dr. McCall's May 20, 2009 clinical note, discussed above at p. 2, in which Dr. McCall wrote that plaintiff's back pain "tends to be worse with stooping and bending maneuvers . . . ." Dr. McCall's clinical note predates plaintiff's alleged disability onset date by more than four years. Evidence that predates the alleged disability onset date, while not necessarily irrelevant, may be "evaluated *in combination with later evidence*" to help establish disability in cases involving a progressive condition. *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411, 414 (6th Cir. 2006)(italics in the original). Plaintiff does not argue that Dr. McCall's clinical note evidenced a progressive condition, only that plaintiff once complained four-plus years prior to the alleged disability onset date that his back pain "tend[ed] to be worse with stooping and bending." Under these facts, Dr. McCall's May 20, 2009 clinical note is not relevant to these proceedings.

Turning to the testimonial evidence, plaintiff testified on his own behalf at the hearing. However, plaintiff did not testify as to any postural limitations upon questioning by the ALJ, nor did counsel address plaintiff's alleged postural limitations when he questioned plaintiff. Plaintiff argues that the ALJ erred because he "did not elicit any testimony at the hearing concerning postural demands." The ALJ does not have a duty to develop the record where the claimant is represented by counsel. *See Bass v. McMahon*, 499 F.3d 506, 514 (6th Cir. 2007); *see also Culp v. Comm'r of Soc. Sec.*, 529 Fed.Appx. 750, 751 (6th Cir. 2013)(citing *Duncan v. Sec'y of Health and Huyman Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)).

Plaintiff also argues that the ALJ "failed to provide specific findings or analysis regarding the physical and mental demands of [his] PRW." As shown in the analysis below, plaintiff's argument is not supported by the record.

Working backwards from the PRW determination, the ALJ wrote that "[t]he claimant is capable of performing past relevant work as a laborer in plastics, DOT 559.667-014, SVP2, medium.

This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Doc. 25-1, p. 32)(bold in the original omitted)  The ALJ wrote further that, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (Doc. 25-1, p. 32)  The ALJ's RFC determination, on which the ALJ based his PRW determination, reads in relevant part: "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work . . . except he is limited to frequent postural movements. . . ." (Doc. 25-1, p. 30)(bold in the original omitted) Finally, in his RFC analysis, the ALJ wrote: "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Doc. 25-1, p. 31)

Notwithstanding plaintiff's argument to the contrary, the ALJ made the three "specific findings" in the paragraph above relevant to his PRW determination.  The next question is whether the ALJ provided any analysis to support those "specific findings."  As previously discussed above at p. 9, the ALJ addressed Dr. Hutchens' progress notes, and as discussed below at pp. 18-22, the ALJ properly gave Dr. Hutchens' MSS "little weight."  The ALJ also addressed the opinions of Drs. Walker and Cohen to which he also gave "great weight."  As previously established, this is the only evidence *relevant* to plaintiff's postural limitations or, more accurately, the lack thereof.  Having made the "specific finding[]" that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," applying "frequent" postural limitations to the RFC was reasonable under the circumstances given that there was no evidence to support more restrictive limitations, *i.e.*, "occasionally" or "never" noted above at p. 13 n. 8.

Plaintiff also argues that the "VE's testimony did not constitute substantial evidence.  The

law is well established that an ALJ may pose hypothetical questions to a vocational expert [but] is required to incorporate only those limitations accepted as credible by the finder of fact. *Winslow v. Comm'r of Soc. Sec.*, 566 Fed.Appx. 418, 421-22 (6th Cir. 2014)(citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ is not required to accept a claimant's subjective complaints, and "can present a hypothetical to the VE on the basis of [her] own assessment if [s]he reasonably deems the claimant's testimony to be inaccurate." *Jones v. Comm's of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Because the VE's testimony was in response to a hypothetical question that accurately reflected plaintiff's impairments, the ALJ was permitted to rely on VE's conclusion to find that plaintiff could perform her PRW, *Kennedy v. Comm's of Soc. Sec.*, 87 Fed.Appx. 464, 467 (6th Cir. 2003)(citing *Felisky v. Bowen*, 35 F.3d 1027, 1036-41 (6th Cir. 1994), and as such the VE's testimony constituted substantial evidence.

The undersigned notes with respect to the paragraph above that, to the extent that plaintiff's argument is that there was a conflict between the VE's testimony and plaintiff's alleged inability to perform the postural requirements associated with the position "General Laborer in Plastics," DOT 559.667-014, counsel did not cross-examine the VE regarding that conflict. The law requires counsel to cross-examine the VE as to any conflicts between the DOT and the hypothetical, *see Beinlich v. Comm's of Soc. Sec.*, 345 Fed.Appx. 163, 168-69 (6th Cir. 2009)(citing *Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008)), and relief on judicial review will not lie in the absence of such cross-examination, *Beinlich*, 345 Fed.Appx. at 168-69 (citing *Ledford*, 311 Fed.Appx. at 757).

For the reasons explained above, plaintiff's argument that the ALJ "failed to adequately address" plaintiff's alleged postural limitations is without merit.

### 4. Whether the ALJ Erred in the Weight He Gave to Dr. Hutchens' Opinion (Doc 28-1, ¶ 4, p. 22)

Plaintiff alleges that "[t]he ALJ failed to accord adequate weight to the opinion of the claimant's treating physician . . . and Dr. Hutchens' treatment and progress notes." Plaintiff argues that "[e]ven with the conflict in the electronic records, Dr. Hutchens' opinion was still entitled to the 'greatest weight' based on his treatment and examination . . . . for the year prior to rendering his opinion." Plaintiff invites the court to "[s]ee the Affidavit of Dr Hutchens . . . to explain the conflict created in the electronic records."[9] (Doc. 28-1, p. 22)

Under the standard commonly called the "treating physician rule," the ALJ is required to give a treating source's opinion "controlling weight" if two conditions are met: the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). However, the ALJ "is not bound by a treating physician's opinions, especially when there is substantial medical evidence to the contrary." *Cutlip v. Sec'y of Health and Human Serv's*, 25 F.3d 284, 287 (6th Cir. 1994). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. §§

---

[9] The "conflict" to which plaintiff refers is addressed in Dr. Hutchens' October 14, 2018 affidavit in which Dr. Hutchens states:

> I have noted that the electronic part of Mr. Hinson's file (**ROS, Muscoskeletory and Neurologic**) is not accurate or consistent with my findings as to Mr. Hinson's conditions or my treatment of him. This is a record keeping problem found in switching to our electronic system and will be corrected. My accurate findings of Mr. Hinson's condition can be found in my progress notes, my diagnosis of his conditions and my prescribed treatment.

(Doc. 25-1, p. 506)(bold added) The affidavit was executed 4-plus months after the ALJ entered his unfavorable decision. The text in bold above establishes the limits of this claim of error.

404.1527(c)(2)-(6)).

As previously noted above at p. 10, the ALJ is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting SSR 96–2p, 1996 WL 374188 at *5 (SSA)). A treating physician's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence. *Morr v. Comm's of Soc. Sec.*, 616 Fed.Appx. 210, 211 (6th Cir. 2015)(citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)).

The ALJ explained why he gave Dr. Hutchens' opinion "little weight" in the excerpts from the decision quoted below.

> In terms of the claimant's alleged back and leg pain, he testified that his primary care physician, Zachary Hutchens, M.D., prescribes Trazadone, gagapentin, and hydrocodone. (Ex. 6F, 7F) **Office visit notes show ongoing treatment for chronic pain; however, they also routinely note no negative side effects from medication; normal musculoskeletal examinations; and normal neurological examinations. Dr. Hutchens did not order physical therapy; objective testing such as nerve conduction studies or MRI's; or referrals to specialists such a[s] neurologist or orthopedist. The claimant has not had any surgical procedures on his back and has not had any emergency room visits due to exacerbations of pain.**
>
> . . .
>
> On December 28, 2014, Dr. Hutchens wrote a medical source statement saying that the claimant can only work two hours per day. He can occasionally lift ten pounds and frequently lift ten pounds. He can frequently perform fine and gross manipulation. He can occasionally raise his bilateral arms over shoulder level. He can occasionally work around dangerous equipment and tolerate dust, smoke, or fumes. He would frequently need to elevate his legs during an eight-hour workday and would need to take frequent, unscheduled breaks. This opinion is given little weight because it is

not consistent with the record as a whole.

(Doc. 25-1, pp. 31-32)(bold added)  The text in bold on the preceding page constitutes "good reason" for giving Dr. Hutchens' opinion "little weight."  The next question is whether that reasoning is supported by substantial evidence.

Comparing the text in bold on the preceding page with Dr. Hutchens's progress notes discussed above at pp. 3-6,  reveals that the ALJ's analysis of those progress notes was spot on in its interpretation of those records.  As noted above at p. 19, however, plaintiff invites the court's attention to Dr. Hutchens' affidavit first submitted to the Appeals Council, *i.e.*, "new evidence," in an effort to cast the record in a different light.

The Sixth Circuit "has repeatedly held that evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  *Foster*, 279 F.3d at 357 (citing *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  The court may, however, remand such matters under "Sentence Six" of § 405(g) "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  Evidence is "new" if it did not exist at the time of the administrative proceeding, and "material" if there is a reasonable probability that a different result would have been reached if introduced at the proceeding.  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010).  "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 269 F.3d at 357.  The Sixth Circuit takes "a harder line on the good cause test" and thus requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing."  *Courter v. Comm'r of Soc. Sec.*, 479 Fed.Appx. 713, 725 (6th Cir. 2012)(quoting *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)).

The alleged "new evidence" described above at p. 17 n. 9 is not "new."  As shown above

at pp. 5-6, the alleged "record keeping problem" was there to be seen and corrected from June 9, 2014 to January 14, 2016, a period of more than one and one-half years. It was there to be seen and corrected prior to and up to the time of the hearing, and at was there to be seen and corrected at all times before the ALJ entered his unfavorable decision.

Evidence of the alleged "record keeping problem" also is not material because there is not a reasonable probability that the Commissioner would have decided the matter in plaintiff's favor had Dr. Hutchens' affidavit been considered. The alleged errors pertain to plaintiff's subjective representations in the records. The law is firmly established that "an ALJ is not required to accept a claimant's subjective complaints . . . ." *See* 20 C.F.R. § 404.1529(a); *Jones,* 336 F.3d at 476; *see also Joseph v. Comm'r of Soc. Sec.*, 741 Fed.Appx. 306, 312 (6th Cir. 2018).

Finally, plaintiff cannot demonstrate "good cause" for the failure to present evidence of the alleged "problem" before the ALJ entered his decision. As shown above at p. 2, attorney Vander Horst represented plaintiff at the April 25, 2016 hearing and at all times subsequent to the hearing. The record shows that the ALJ discussed the conflict in the records at issue at length with counsel at the hearing, that the ALJ advised counsel the onus was on plaintiff to make the ALJ aware of any medical records pertaining to his alleged disability, and that the ALJ informed counsel he "hope[d]" to enter his decision within "about six weeks" of the hearing (Doc. 25-1, pp. 62-65, 95). However, the record shows that counsel did not have Dr. Hutchens execute the affidavit at issue until October 14, 2016, five-plus months after the hearing. In short, counsel had ample time to obtain and submit Dr. Hutchens' affidavit before the decision entered . . . but he failed to do so. Mistakes made by counsel do not constitute "good cause " for purposes of remand under "Sentence Six." *See Cline,* 96 F.3d at 149; *see also Taylor v. Comm'r of Soc. Sec.*, 43 Fed.Appx. 941, 942-43 (6th Cir. 2002).

As shown above, plaintiff cannot satisfy any part of the three-part test necessary to warrant a "Sentence Six" remand with respect to the alleged "record keeping problem" that Dr. Hutchens

refs to in his affidavit. That said, the undersigned turns his attention to whether the ALJ's decision to give "little weight" to Dr. Hutchens' opinion is supported by *other* substantial evidence.

As discussed above at p. 3, plaintiff underwent a CT scan at St. Thomas Hickman on February 6, 2014. Dr. Friday noted in his radiology report that plaintiff exhibited "[m]arked degenerative changed of the thoracolumbar spine," which Dr. Durakiewicz clarified as being "mild" after reviewing plaintiff's "records in [the] radiology department." The St. Thomas Hickman CT scan does not support Dr. Hutchens' MSS and, as such, constitutes other substantial evidence in support of the ALJ's decision to give Dr. Hutchens's opinion "little weight." As discussed above at p. 4, plaintiff was examined consultively by Dr. Rinehart pursuant to which examination Dr. Rinehart opined that plaintiff "should be able to sit, stand, lift, and walk six to eight hours total in an eight-hour workday." Dr. Rinehart's report does not support Dr. Hutchens' MSS and, as such, constitutes other substantial evidence in support of the ALJ's decision to give Dr. Hutchens' opinion "little weight." Finally, Drs. Walker and Cohn both opined that plaintiff was able to perform the full range of medium work, and that plaintiff had no postural limitations. The reports of Drs. Walker and Cohn do not support Dr. Hutchens' MSS and, as such, they constitute other substantial evidence in support of the ALJ's decision to give Dr. Hutchens' opinion little weight.

As shown above, the ALJ's decision to give Dr. Hutchens' opinion "little weight" is supported by substantial evidence. As shown above, plaintiff also is not entitled to remand under "Sentence Six" of § 405(g). Accordingly, plaintiff's fourth claim of error is without merit.

### 5. Whether The Record Lacks Sufficient Clarity to Warrant Remand (Doc. 28-1, ¶ 5, p. 22)

Plaintiff's fifth and final claim of error is quoted below in its entirety for convenience of reference:

> Several courts have held that a remand is required when the record is

> in such a state that it cannot be properly reviewed on appeal. Because of the internal conflicts in the analysis of Social Security consultants, Dr. Joslin's analysis, the ALJ's factual errors and failure to comply with SSR 82-62, this is particularly true in this case. See, <u>Simpson</u>, *supra*, p. 13.

Although plaintiff does not say so specifically, it is apparent from the excerpt above, and his comment in the statement of the case (Doc. 28-1, pp. 1-2), that he is seeking remand under "Sentence Four" of § 405(g) relying on having prevailed on one or more of his other claims of error. As shown above, plaintiff is not entitled to relief on any of his other claims of error. Consequently, plaintiff's demand for remand under "Sentence Four" of § 405(g) is without merit.

## IV. CONCLUSION
## AND
## RECOMMENDATION

For the reasons explained herein, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 28) be **DENIED** and the Commissioner's decision **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 149, 155, *reh'g denied*, 474 U.S. 111 (1986); *see Berry v. Warden, Southern Ohio Correctional Facility*, 872 F.3d 329, 335 (6th Cir. 2017).

ENTERED this 27th day of February, 2019.


/s/ Joe B. Brown_____
Joe B. Brown
United States Magistrate Judge+